**ROCKFORD LEAGUE OF WOMEN VOTERS, Petitioner,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION, Respondent.**

**Commonwealth Edison Company, Intervenor-Respondent.**

**No. 81–1772.**

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1982.

Decided June 3, 1982.

As Amended on Denial of Rehearing
July 6, 1982.

Peter A. Flynn, Cherry & Flynn, Chicago, Ill., for petitioner.

C. Sebastian Aloot, Nuclear Reg. Comm., Washington, D. C., Paul M. Murphy, Isham, Lincoln & Beale, Chicago, Ill., for respondent.

Before BAUER, Circuit Judge, GIBSON, Senior Circuit Judge,* and POSNER, Circuit Judge.

POSNER, Circuit Judge.

This is a petition to review administrative agency inaction: the refusal of the Nuclear Regulatory Commission's Director of Nuclear Reactor Regulation to institute a proceeding to revoke Commonwealth Edison Company's permit to construct a nuclear electrical generating plant at Byron, Illinois.

The permit was granted in 1975 after the NRC staff had reviewed, and a hearing had been conducted pursuant to 42 U.S.C. § 2239(a) on, Commonwealth Edison's plans for the Byron plant, in order to make sure that "the proposed facility can be constructed and operated at the proposed location without undue risk to the health and safety

* Of the Eighth Circuit.

of the public." 10 C.F.R. § 50.35(a). The issuance of a construction permit is the first step in the two-step process prescribed by 42 U.S.C. § 2235 for the licensing of nuclear power plants. The second is the granting of the actual operating license for the facility. Even if a construction permit has been issued—even if construction has been completed—the Commission may not issue an operating license unless it "has found that the final design provides reasonable assurance that the health and safety of the public will not be endangered by operation of the facility in accordance with the requirements of the license and the [Commission's] regulations . . . ." 10 C.F.R. § 50.35(c).

In 1978, with completion of the Byron plant in (distant) sight, Commonwealth Edison applied for an operating license. A proceeding on that application is in progress, with hearings scheduled to begin this August. Among the intervenors in the licensing proceeding was the Rockford League of Women Voters. (Rockford is about 17 miles from the construction site.) The League was expelled from the proceeding because of its willful and persistent refusal to comply with discovery orders. Just the other day, however, the Commission's Atomic Safety and Licensing Appeal Board held that, while the League was indeed guilty of serious misconduct, expulsion was too harsh a remedy in the circumstances; and the Board has ordered the League reinstated as a party to the licensing proceeding. *Commonwealth Edison Co.,* ALAB-678 (June 17, 1982).

Before its expulsion from the licensing proceeding the League had requested the Commission's Director of Nuclear Reactor Regulation to institute a separate proceeding to revoke Commonwealth Edison's construction permit. The Commission may revoke a license—defined in 42 U.S.C. § 2235 to include a construction permit—for any reason that would have justified the Commission in refusing to issue the license in the first place. 42 U.S.C. § 2236(a). A regulation promulgated by the Commission delegates the Commission's authority under this section, so far as is relevant to this

case, to the Director of Nuclear Reactor Regulation. 10 C.F.R. § 2.202. Another regulation provides that "Any person may file a request for the Director of Nuclear Reactor Regulation . . . to institute a proceeding pursuant to § 2.202 . . . ." § 2.206(a). If the Director decides not to institute such a proceeding, he is required to advise the requesting party of his decision in writing, giving "the reasons therefor." § 2.206(b). The Commission may on its own motion review the Director's decision for abuse of discretion, but it will not entertain any petition or request for such review. § 2.206(c).

The League's request that the Director institute a proceeding to revoke the construction permit for the Byron plant was filed in November 1980, when construction was 50 percent complete. The League alleged that a number of issues concerning safe operation of the plant had not been resolved at the construction-permit stage; that some of these had not even been recognized as issues until the nuclear accident at Three Mile Island, Pennsylvania in 1979, which occurred after the construction permit had been issued for the Byron plant; and that Commonwealth Edison did not have enough money to solve the safety problems that the League had identified. In May 1981 the Director denied the League's request to institute a revocation proceeding. He stated that all of the issues raised by the League were being or would be considered in the pending proceeding on Commonwealth Edison's application for an operating license, and he rejected the League's suggestion that consideration of these issues would be prejudiced by the investment that Commonwealth Edison would have sunk in the construction of the plant by the time the Commission was ready to act on its application for an operating license, or by the alleged inability of Commonwealth Edison to spend more money on safety. The Director's denial of the League's request became final in August 1981 when the Commission declined to review his action.

We consider first, *sua sponte*, whether the Director's action in refusing to initiate a

proceeding to revoke the construction permit for the Byron plant is reviewable in this court—as assumed, without discussion, in *Illinois v. NRC*, 591 F.2d 12 (7th Cir. 1979), and *Porter County Chap. of Izaak Walton League of America, Inc. v. NRC*, 606 F.2d 1363 (D.C.Cir.1979)—or in the district court. The Judicial Code, 28 U.S.C. § 2342(4), gives the federal courts of appeals exclusive jurisdiction to enforce those orders of the NRC that are made reviewable by 42 U.S.C. § 2239; and since no other statute gives the courts of appeals jurisdiction to review orders of the NRC besides 28 U.S.C. § 2342(4), which is limited by its terms to orders made reviewable by 42 U.S.C. § 2239, only those orders are reviewable in these courts. See *Citizens for a Safe Environment v. AEC*, 489 F.2d 1018, 1020 (3d Cir. 1973); *Honicker v. Hendrie*, 465 F.Supp. 414, 418–19 (M.D.Tenn.1979). Section 2239(b), in turn, makes reviewable "Any final order entered in any proceeding of the kind specified in" section 2239(a). The proceedings specified in that section, so far as is relevant to this case, are proceedings for granting and revoking licenses, including construction permits.

At least on a literal reading of section 2239(b), the Director's action in denying the petitioner's request to initiate a revocation proceeding was not an order, final or otherwise, in a section 2239 proceeding; it was a refusal to initiate such a proceeding; and while the petitioner could in the licensing proceeding to which it was once a party have, if it had remained a party, sought a stay of construction, an immediate hearing on safety questions, or other relief the denial of which might—perhaps—be deemed a final order in a section 2239 proceeding, it did none of these things. The League is emphatic that what it wants is a brand-new proceeding wholly separate from the pending licensing proceeding.

The distinction between the entry of an order in an ongoing proceeding and the refusal to launch a new proceeding was recognized in both *Illinois v. NRC, supra*, 591 F.2d at 14 n.3, and *Porter County, supra*, 606 F.2d at 1368, though the implications for the jurisdiction of the courts of appeals were not addressed. In *Porter County* (and possibly in *Illinois v. NRC* as well, though one cannot tell from the opinion in that case) the petitioner was a party to an ongoing proceeding before the Commission. The petition for a new proceeding could therefore be construed as a petition for a hearing on safety in the ongoing proceeding, and there is a hint in *Porter County* that this is the true basis of the court of appeals' jurisdiction. See 606 F.2d at 1370. The petitioner in the present case was still a party to the licensing proceeding when it asked the Director of Nuclear Reactor Regulation to initiate a proceeding to revoke Commonwealth Edison's construction permit, but as we have said it is emphatic that what it wants is a brand-new proceeding rather than an additional hearing in the licensing proceeding. Cf. *Gage v. AEC*, 479 F.2d 1214, 1218 (D.C.Cir.1973).

A ruling that the courts of appeals lack jurisdiction to review the Director's refusal to initiate a revocation proceeding would not leave the petitioner remediless. The League could still bring suit in district court under 28 U.S.C. § 1331, the general federal-question jurisdictional statute, see *Izaak Walton League of America v. Schlesinger*, 337 F.Supp. 287, 291–92 (D.D.C.1971); *Gage v. Commonwealth Edison Co.*, 356 F.Supp. 80, 84 (N.D.Ill.1972); *Gage v. AEC, supra*, 479 F.2d at 1222, and perhaps under other statutes, such as 28 U.S.C. § 1337 (acts regulating commerce), as well. The district court is arguably the more appropriate venue for a proceeding to review informal agency action, of which agency inaction is a conspicuous example. In deciding not to initiate a proceeding to revoke the Byron construction permit, the Director of Nuclear Reactor Regulation naturally did not compile the kind of formal record that is the usual predicate for reviewing agency action in the courts of appeals. To decide whether he abused his discretion it might be necessary to reconstruct the informal record on which he based his decision. The district courts are better suited to perform that task than the courts of appeals. See *Susquehanna Valley Alliance v. Three Mile Is-*

*land Nuclear Reactor*, 619 F.2d 231, 241 (3d Cir. 1980).

But despite all this we have concluded, primarily on the authority of *Natural Resources Defense Council, Inc. v. NRC*, 606 F.2d 1261, 1265 (D.C.Cir.1979), that the courts of appeals rather than the district courts have exclusive jurisdiction to review refusals to initiate section 2239 proceedings. In *NRDC* the Commission had refused the petitioner's request to institute certain licensing proceedings, believing it lacked jurisdiction. The court of appeals held that this refusal was a final order in a section 2239 proceeding because "a licensing jurisdictional determination is a necessary first step in any proceeding for the granting of a license." Similarly, a determination under 10 C.F.R. § 2.206 to initiate a license-revocation proceeding is a necessary first step in that proceeding.

One might be able to distinguish *NRDC* from this case, pointing out that the court prefaced its holding with the words "In the circumstances of this case," 606 F.2d at 1265, and noting the court's emphasis on the fact that it had "an administrative record on which to base our review," *id.*, which as we have said could be a problem in a discretionary agency inaction case such as this. But jurisdictional lines ought whenever possible to be clear, so that litigants know what court they can proceed in; it would not do to distinguish between jurisdictional and discretionary refusals to act for purposes of allocating jurisdiction between the courts of appeals and the district courts.

The District of Columbia Circuit's holding in *NRDC* admittedly does some violence to the language of 42 U.S.C. § 2239(b), but not so much, we think, as cannot be justified by the benefits to judicial economy from confining judicial review of NRC determinations to the courts of appeals. Whenever the district courts have jurisdiction to review agency action, it means that anybody aggrieved by that action is entitled to two successive judicial reviews of it—first in the district court and then, on appeal, in the court of appeals. This in turn implies five tiers of potential judicial or quasi-judicial review of the petitioner's request in this case: by the Director of Nuclear Reactor Regulation, by the full Commission, by the district court, by the court of appeals, and by the Supreme Court. This is too much. See *Investment Co. Inst. v. Board of Govs. of Fed. Res. Sys.*, 551 F.2d 1270, 1278–80 (D.C.Cir.1977); Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum*, 75 Colum.L. Rev. 1, 16–19 (1975). The court of appeals' lack of fact-finding capacity can be got round in other ways. See *Investment Co. Inst.*, *supra*, at 1280 and n.9; Currie & Goodman, *supra*, at 41–53. Even if we were somewhat inclined as an original matter to come out the other way, we much prefer where possible to avoid creating a conflict among circuits. We therefore interpret "proceeding" in section 2239(b) as encompassing the informal proceeding that is commenced by the request to the Director of Nuclear Reactor Regulation to institute a formal revocation proceeding.

Another jurisdictional question in this case is the petitioner's standing to maintain this action. The standing of an organization is derivative of its members' standing, see *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), so we must consider whether members of the Rockford League of Women Voters would have had standing to complain about the Director's action if they had filed this petition personally. They would have if they could show a threat of physical illness or injury. The League's request to the Director to initiate a permit-revocation proceeding alleged, plausibly enough given the proximity of Rockford to the construction site, that members of the League "live near the site of the Byron Station"—near enough we should think to be endangered should the Byron plant be unsafe. This does not quite answer the standing question, because until the plant is actually licensed there cannot be any danger to the inhabitants of Rockford. But the League further alleges that if the safety problems that it raised in its request to the Director are not solved before construction is completed they will never be solved—the Commission will be stampeded into granting a

license regardless. This allegation is sufficient to confer standing, and we come at last to the merits.

■ In turning down the League's request that he institute a proceeding to revoke Commonwealth Edison's construction permit, the Director of Nuclear Reactor Regulation violated no statute or regulation. See *Illinois v. NRC, supra,* 591 F.2d at 14; *Porter County, supra,* 606 F.2d at 1367–69. The statute, 42 U.S.C. § 2236(a), permits but does not direct the NRC to revoke a license or permit, and the implementing regulations are likewise permissive rather than mandatory. The only thing the Director is required to do is, if he decides not to institute a revocation proceeding, to notify the requesting party in writing of his decision and of the reasons for it—which he did.

But the League argues that in decisions reviewing the Director's exercise of his discretion to institute or decline to institute revocation proceedings the Commission has created, in common law fashion, an implicit rule as to when such proceedings should be instituted, a rule that it violated in this case. We do not understand the force of this argument. If the Commission has the power (and we do not doubt that it has) to create rules by the common law process of case by case inclusion and exclusion, it must also have the power to modify those rules in the same way, and its refusal to disturb the Director's decision in this case, if inconsistent with its previous common law rule, may be taken to modify it. But in any event the only two rules we are able to find in the decisions that have been cited to us do not suggest that the Director violated any common law rule of the Commission. One rule, obviously inapplicable to this case, is that the Director must initiate a section 2.202 proceeding when substantial health or safety issues arise after a nuclear facility has gone into operation. See *Consolidated Edison Co.,* 2 N.R.C. 173, 176 (1975). The other is that he should not initiate such a proceeding when the safety issues that it would address are being considered in another proceeding, as they are here. See *Pacific Gas & Elec. Co.,* 13 N.R.C. 443 (1981). If this is a valid rule, it puts the League right out of court; but since the Commission does not rely on it, we shall not either.

Having put aside any question whether the Commission violated a statute, regulation, or other rule, we have now to consider the scope of judicial review of pure agency inaction—that is, agency refusal to exercise a power which is not also a duty. See Stewart & Sunstein, *Public Programs and Private Rights,* 95 Harv.L.Rev. 1193, 1197, 1205–06, 1284–89 (1982).

The Supreme Court has reminded us in another context that the scope of judicial review of agency inaction is very limited. See *Dunlop v. Bachowski,* 421 U.S. 560, 572–73, 95 S.Ct. 1851, 1860, 44 L.Ed.2d 377 (1975). Our own decision in *Illinois v. NRC, supra,* 591 F.2d at 16, a case much like this one, states that it is confined to "extremely compelling circumstances." To similar effect see *Porter County, supra,* 606 F.2d at 1369–70. Government agencies have limited resources to perform their appointed tasks. The courts cannot tell them how to allocate those resources so as to get the most value out of them. That calls for a managerial judgment. The Byron Station is not the only nuclear power plant under construction or in operation that the Nuclear Regulatory Commission has to worry about. The Commission is in the midst of one proceeding dealing with the Byron plant, the licensing proceeding, in which the safety issues that trouble the League will be considered and in which hearings are about to start in which the League, as a result of its recent reinstatement, can still participate if it wants. We cannot say that the Commission must launch another proceeding on the same issues at the same time—which is what the League wants us to say—rather than use the adjudicatory resources that would be consumed in such a proceeding somewhere else in its regulatory domain.

The League argues that it is too late to address safety issues at the operating-license stage. By then the plant is com-

plete, or nearly so; billions of dollars may have been sunk in its construction; the Commission would never insist on costly safety modifications—let alone require that the plant be rebuilt from scratch because its fundamental design was unsafe—especially where, as here, the utility is alleged to be financially shaky. This argument would have more force in a case where construction was in its early stages. But the Byron plant is now 80 to 90 percent completed. If there is the momentum the League fears, it is by this time irreversible. But even if the Byron plant were further from completion than it is, we doubt that we would find the League's argument for our intervening to compel the Commission to conduct a second, parallel proceeding impressive. In polite but unmistakable innuendo the League accuses the Commission of being the tool of the utility. It refuses to accept the Commission's assurance, founded on statute and regulation, that it will not grant an operating license for an unsafe plant no matter how much money has been irrevocably sunk in its construction or how financially distressed the utility is. If the League is right in its insinuation that the Commission is a captive of Commonwealth Edison there is very little this court can do. If the Commission will not honestly consider the safety issues raised by the League in the hearings on Commonwealth Edison's application for an operating license that are due to begin this August it will not do so in hearings on a permit-revocation proceeding ordered by us that realistically could not begin till later.

The nuclear accident at Three Mile Island in 1979, much emphasized in the League's submissions, has caused justifiable anxiety about the safety of nuclear power plants. The Commission points to many steps that it has taken in the wake of the accident to assure their safety. The League argues that these steps are inadequate. We are not a competent forum to resolve this dispute, which is technical in nature. Our job is to assure that the Commission complies with the specific statutes and regulations applicable to its regulatory activities. It

has done so here. Beyond that our power to review an agency's decision not to initiate a proceeding is extremely limited. We would exercise it only if we were strongly convinced that the Commission was inexcusably defaulting on its fundamental responsibility to protect the public safety from nuclear accidents. Given the pendency of the licensing proceeding, we are not so convinced in this case.

The petition for review is

DENIED.