SEACOAST ANTI–POLLUTION
LEAGUE OF NEW HAMP-
SHIRE, Petitioner,

v.

NUCLEAR REGULATORY COMMIS-
SION and United States of
America, Respondents,

Public Service Company of New
Hampshire, Intervenor.

No. 81–2146.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 28, 1982.

Decided Oct. 8, 1982.

Robert A. Backus, Manchester, N.H., for petitioner.

Richard P. Levi, Counsel, U.S. Nuclear Regulatory Com'n, Washington, D.C., with whom James A. Fitzgerald, Counsel, Nuclear Regulatory Com'n, and Peter R. Steenland and Anne S. Almy, Attys., U.S. Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Thomas G. Dignan, Jr., Boston, Mass., with whom R. K. Gad, III, Boston, Mass., was on the brief, for intervenor.

Peter G. Crane, Counsel, Nuclear Regulatory Com'n, and Robert L. Klarquist, Atty., U.S. Dept. of Justice, Washington, D.C., also entered appearances for respondents.

Before TAMM, Circuit Judge, THOMAS E. FAIRCHILD,* Senior Circuit Judge for the Seventh Circuit, and WILKEY, Circuit Judge.

Opinion filed by Circuit Judge TAMM.

* Sitting by designation pursuant to 28 U.S.C.

TAMM, Circuit Judge:

The issue in this case is whether the Nuclear Regulatory Commission (the Commission) acted arbitrarily or capriciously in refusing to order a hearing to determine whether construction permits for the Seabrook Nuclear Generating Station should be suspended or revoked pending study of evacuation feasibility for certain areas surrounding the station. Because the Commission's decision not to hold such a hearing at this time has a reasoned basis supported by law, we affirm.

### I. THE COMMISSION'S PROCEEDINGS

The Atomic Energy Act of 1954, 42 U.S.C. §§ 2011 *et seq.* (1976), established a two-stage process for approving the construction and operation of nuclear power plants: first, before construction of a plant may begin, the Commission must issue a construction permit; second, before the plant may begin operations, the Commission must grant an operating license. 42 U.S.C. §§ 2133, 2232, 2235, 2239 (1976 & Supp. IV 1980); *see Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 525–27, 98 S.Ct. 1197, 1202–03, 55 L.Ed.2d 460 (1978); *Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers, AFL–CIO,* 367 U.S. 396, 403–07, 81 S.Ct. 1529, 1532–34, 6 L.Ed.2d 924 (1961). The information that must be included in an application for a construction permit or an operating license is prescribed by the Commission by regulation. 10 C.F.R. §§ 50.-33–.37 (1982). At either the construction permit or operating license stage, the public can petition to intervene in the proceeding and thereby comment on the pending application and provide information to the Commission regarding the wisdom of approval. *Id.* § 2.714.

In 1976 the Commission issued construction permits to intervenor, the Public Service Company of New Hampshire (PSC), for the construction of a two-unit nuclear pow-

§ 294(d) (1976).

er plant known as the Seabrook Nuclear Generating Station. The Commission is scheduled to make a decision by November 1983 on whether to grant the plant an operating license.[1] On May 2, 1979, the petitioner, Seacoast Anti-Pollution League of New Hampshire (SAPL), pursuant to 10 C.F.R. § 2.206(a) (1982),[2] requested the Director of the Commission's Office of Nuclear Reactor Regulation (the Director) to issue an order to show cause why the Seabrook construction permits should not be suspended or revoked.[3] The grounds for this request were SAPL's assertions that the Commission had failed "to require development of an evacuation plan beyond the low population zone [LPZ] as part of the construction permit proceedings"[4] and that the Commission had failed "to evaluate . . . the necessity for evacuation beyond the [LPZ]" should the most severe type of nuclear accident occur. Request for an Order to Show Cause, *In re Public Service Company of New Hampshire,* NRC Docket Nos. 50–443, 50–444 (May 2, 1979), Petitioner's Appendix (P.A.) at 54.

On February 11, 1980, the Director denied SAPL's request, noting that a study of

evacuation times for the Seabrook area was then underway.[5] While considering whether to review the Director's decision, the Commission received a letter from SAPL dated June 30, 1980, providing additional information on the allegedly unique features of the Seabrook area. The Commission referred this letter to the Director for consideration as a new request under 10 C.F.R. § 2.206(a).[6] On July 15, 1981, the Director denied SAPL's request for a hearing, noting that the continued construction of the Seabrook plant did not itself constitute a danger to public health or safety, that adequate evacuation plans for the Seabrook area could be developed, and that the adequacy of the evacuation plans would be addressed in the operating license review.[7]

The Commission declined to review the Director's decision, and on September 11, 1981, his ruling became the final order of the Commission.[8] SAPL then petitioned for review of that order in this court.

## II. JURISDICTION

■ Although the issue has not been raised by the parties, we must at the outset decide whether we have jurisdiction in this

1. Letter to Robert A. Backus, Counsel for Seacoast Anti-Pollution League, from Roy P. Lessy, Deputy Ass't Chief Hearing Counsel, Nuclear Regulatory Commission (Dec. 21, 1981), Petitioner's Appendix (P.A.) at 173–74.

2. 10 C.F.R. § 2.206(a) (1982) provides in pertinent part: "Any person may file a request for the Director of Nuclear Reactor Regulation . . . to institute a proceeding pursuant to § 2.202 to modify, suspend or revoke a license . . . ." 10 C.F.R. § 2.202 (1982) authorizes the Director of Nuclear Reactor Regulation to "institute a proceeding to modify, suspend, or revoke a license . . . by serving on the licensee an order to show cause."

3. Although Seacoast Anti-Pollution League of New Hampshire (SAPL) requested a hearing on either suspension or revocation of the Seabrook construction permits, we will refer to the hearing sought by SAPL as a "revocation hearing."

4. The low population zone (LPZ) is a type of buffer zone around a nuclear reactor from which persons can be evacuated in case of a radiological emergency and beyond which persons will be exposed to no more than certain allowable dosages of radiation if a radioactive cloud is released from the plant. The size of

the LPZ for any plant is calculated on the basis of the proximity of the plant to major population centers, the engineered safeguards in the plant, and the evacuation capability of the surrounding area. *See* 10 C.F.R. §§ 100.-3(b), .11(a)(2)–(3) (1982); *see also* Brief for Respondents at 8 n. 5. The LPZ can be quite small, and the LPZ around the Seabrook plant is 1.5 miles. Brief for Respondents at 8.

5. Letter from Harold R. Denton, Director, Office of Nuclear Reactor Regulation, to Robert A. Backus, Counsel for Seacoast Anti-Pollution League (Feb. 11, 1980), P.A. at 14–15.

6. Letter from Harold R. Denton, Director, Office of Nuclear Reactor Regulation, to Robert A. Backus, Counsel for Seacoast Anti-Pollution League (Oct. 21, 1980), P.A. at 27.

7. Director's Decision, *In re Public Service Company of New Hampshire,* NRC Docket Nos. 50–443, 50–444 (July 15, 1981), P.A. at 30–41.

8. Letter from Samuel J. Chilk, Secretary of the Commission, to Robert A. Backus, Counsel for Seacoast Anti-Pollution League (Sept. 11, 1981), P.A. at 45.

case. Under 28 U.S.C. § 2342(4) (1976), the courts of appeals have jurisdiction to review "all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42." [9] Section 2239 of title 42 of the United States Code makes reviewable "[a]ny final order" in "any proceeding under this chapter, for the suspending, revoking, or amending of any license or construction permit." 42 U.S.C. § 2239 (1976). Thus, we have jurisdiction to entertain SAPL's petition for review only if the Commission's final order was entered in a proceeding for the revoking of the Seabrook construction permits. In *Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission,* 606 F.2d 1261 (D.C.Cir.1979), we addressed the question whether a final order of the Commission refusing to exercise its licensing jurisdiction over nuclear waste storage tanks was reviewable. We held that the order was entered in a proceeding for the granting of a license "[s]ince a licensing jurisdiction determination is a necessary first step in any proceeding for the granting of a license." *Id.* at 1265.

Our analysis in *Natural Resources Defense Council* was recently followed by the Seventh Circuit Court of Appeals in the context of the Commission's refusal to institute a proceeding under 10 C.F.R. § 2.206. In *Rockford League of Women Voters v. United States Nuclear Regulatory Commission,* 679 F.2d 1218 (7th Cir. 1982), the court held that the Commission's order refusing to institute a revocation proceeding is a reviewable final order under 42 U.S.C. § 2239 (1976). The court noted that "a determination under 10 C.F.R. § 2.206 to initiate a license-revocation proceeding is a necessary first step in that proceeding," *id.* at 1221, and interpreted the term "proceeding" to encompass "the informal proceeding that is commenced by the request to the Director ... to institute a formal revocation proceeding." *Id.*

Similarly, in this case the Commission's determination whether to institute a revocation proceeding was "a necessary first step" in any proceeding for the revocation of the Seabrook construction permits. Hence, we hold that the Commission's final order refusing to institute such a proceeding is reviewable by this court under 42 U.S.C. § 2239 (1976).

### III. BACKGROUND

In order to understand the parties' positions in this case, one must know something about the developments in the law and in the nuclear power industry that have taken place since the Seabrook construction permits were granted in 1976. The most important of these intervening developments was the March 1979 accident at the Three Mile Island nuclear plant in Pennsylvania. Studies precipitated by that accident revealed serious deficiencies in emergency planning for the area around the plant. *See* 1 Nuclear Regulatory Commission Special Inquiry Group, *Three Mile Island: A Report to the Commissioners and to the Public* (Rogovin Report), P.A. at 197–205; *Report of the President's Commission on the Accident at Three Mile Island* (Oct. 1979), P.A. at 211–15. In particular, the studies found that the Commission's regulations requiring evacuation planning for only the LPZ, *see supra* note 3, were inadequate to assure the safety of those actually threatened by the accident. During the emergency, the studies noted, although the Three Mile Island LPZ only extended approximately two miles from the reactor, officials had considered evacuation of an area up to ten miles from the reactor. The studies therefore recommended that the Commission require evacuation planning for an area larger than the LPZ. Rogovin Report, *supra,* P.A. at 207, 208–10; *Report of the President's Commission on the Accident at Three Mile Island, supra,* P.A. at 214–15.

**9.** The Atomic Energy Commission (AEC) was abolished by the Energy Reorganization Act of 1974, 42 U.S.C. § 5814(a) (1976), and its licensing and enforcement functions were transferred to the Nuclear Regulatory Commission. *Id.* § 5841(f). Final orders entered by the Nuclear Regulatory Commission in the performance of functions transferred from the AEC are reviewable as if entered by the AEC. *Id.* § 5871(g).

In light of this recommendation, the Commission adopted new regulations that require emergency planning for areas beyond the LPZ, the so-called Emergency Planning Zones (EPZ's).[10] *See* 45 Fed.Reg. 55402–18 (Aug. 19, 1980). These regulations require applicants for construction and operating licenses to submit emergency plans for the EPZ's, including EPZ evacuation time estimates. 10 C.F.R. § 50.-34(b)(6)(v) (1982).[11] In addition, before the Commission can grant an operating license, it must find "that the state of onsite and offsite emergency preparedness provides reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency." *Id.* § 50.47(a)(1). The licensees of plants under construction when the new regulations were adopted, including Seabrook, were notified that additional emergency preparedness regulations would be imposed at the operating licensing stage.[12] Construction permits already issued, however, were not reevaluated in terms of plans for evacuation beyond the LPZ.[13] Thus, for the Seabrook plant only preliminary LPZ evacuation plans were necessary at the construction permit stage of the approval process, but final EPZ evacuation plans will be required at the operating license stage.

## IV. THE POSITIONS OF THE PARTIES

Petitioner SAPL argues that because of the varying standards in effect for Seabrook evacuation planning at the construction permit and operating license stages, the Commission should have ordered a revocation hearing to determine whether PSC will be able to develop acceptable EPZ evacuation plans for the Seabrook plant.[14] Petitioner correctly notes that the Commission made no finding at the construction permit stage that evacuation of persons beyond the LPZ was possible because no such finding was then required. Brief for Petitioner at v; *see also* Brief for Respondents at 7–10. In fact, SAPL argues, evidence

---

**10.** In addition to an LPZ, every nuclear power plant has two Emergency Planning Zones (EPZ's). One, the "plume exposure pathway EPZ," extends for approximately ten miles around the reactor. 10 C.F.R. § 50.47(c)(2) (1982). The other, the "ingestion pathway EPZ," extends for about fifty miles around the reactor. *Id.* In case of a nuclear accident, the licensee must be able to protect persons in the plume exposure EPZ and must monitor milk and foodstuffs for radioactive contamination in the ingestion pathway EPZ. *See generally* Brief for Respondents at 11 n. 9. In this opinion the term "EPZ" will refer only to the plume exposure pathway EPZ.

**11.** The regulations do not require development of EPZ evacuation plans as part of the EPZ emergency plans. The regulations require only plans for a "range of protective actions" for the EPZ, 10 C.F.R. § 50.47(b)(10) (1982), which may or may not include evacuation. Nevertheless, the parties seem to assume that development of EPZ evacuation plans for the Seabrook plant may well be required; therefore, we will discuss EPZ evacuation planning as a requirement for the Seabrook plant.

**12.** On August 23, 1978, the Commission published the first proposed rule that would require emergency planning for areas beyond the LPZ. 43 Fed.Reg. 37473 (Aug. 23, 1978). Accompanying this proposed rule was the Commission's statement that "[i]n cases where a construction permit has already been issued, the emergency plans will be reviewed at the operating license stage ...." *Id.* at 37475. Additionally, in November 1979 the Commission staff notified all licensees of plants then under construction of the additional emergency preparedness requirements that would be imposed at the operating license stage. *See* Brief for Respondents at 12 n. 10. Intervenor Public Service Company of New Hampshire has not denied receiving this notice.

**13.** Although the Commission considered reevaluating outstanding construction permits in light of the proposed new emergency planning requirements, 44 Fed.Reg. 75167, 75170 (Dec. 19, 1979), the final rule did not require reevaluation of outstanding construction permits. 45 Fed.Reg. 55402 (Aug. 19, 1980).

**14.** SAPL also argues that regulations adopted by the Commission provide no standard by which to gauge the adequacy of emergency plans because they do not set out specific radiation dose limits and release times. Brief for Petitioner at vii, 33–41. We do not address this argument because of the procedural posture of this case. Petitioners could have directly challenged the regulations after their promulgation, or they can petition the Commission to amend the regulations. *See* 10 C.F.R. § 2.802(a) (1982). A request for a proceeding under 10 C.F.R. § 2.206 (1982) is not a proper mechanism for attacking regulations on substantive grounds.

presented to the Commission shows that evacuation beyond the Seabrook LPZ would be impossible because of features unique to the Seabrook site.[15] Thus, SAPL asserts, not only has there been no preliminary finding that evacuation of the Seabrook EPZ is feasible, but there is also evidence that evacuation of the EPZ would not be feasible.

SAPL contends that the Commission has erred in allowing construction of the Seabrook plant to proceed without even a preliminary plan for EPZ evacuation. SAPL argues that the Commission's duty to grant an operating license only if it finds "reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency," 10 C.F.R. § 50.47(a)(1) (1982), renders it arbitrary and capricious for the Commission to postpone until the operating license stage resolution of a safety issue on which there has been no preliminary finding, particularly when there is evidence that the licensee will be *unable* to provide the requisite "reasonable assurance." [16] SAPL further argues that the Commission will be unable to judge accurately the adequacy of EPZ evacuation plans at the operating license stage because by that time the ever-growing financial investment of the PSC will skew the Commission's judgment.

For its part, the Commission argues that its refusal to order a revocation hearing was neither arbitrary nor capricious. First, the Commission notes that its regulations require such a hearing only if license violations exist at the plant or if continued construction itself poses a threat to public health and safety. 10 C.F.R. § 2.202(a)(1) (1982). Neither of these standards, the Commission contends, is met by the alleged infeasibility of evacuating the area around

the Seabrook plant. Second, the Commission notes that although it was not required to make a finding on the feasibility of evacuation of the Seabrook EPZ before granting the construction permits, the Director in denying SAPL's request for a hearing found that evacuation beyond the Seabrook LPZ is feasible. Thus, the Commission argues, it is reasonable to believe that PSC will be able to "provide reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency" as required by 10 C.F.R. § 50.47(a)(1).

According to the Commission, if it appears at the operating license review that the infeasibility of EPZ evacuation renders it impossible for PSC to provide the requisite "reasonable assurance," the operating license will not be granted. The Commission thus argues that because the EPZ evacuation issue will be addressed in the operating license review, it was not arbitrary or capricious to refuse to address it sooner. The Commission further denies that PSC's financial investment in the plant will influence its consideration of whether to grant the operating license. Brief for Respondents at 36–37.

### V. ANALYSIS

The standard for reviewing the Commission's decision in this case is the familiar arbitrary or capricious standard provided by section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976). This standard of review is "narrow," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), and "highly deferential," *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1, 34 (D.C.Cir.1976). We are em-

---

**15.** These features include the presence of a popular beach within sight of the reactor and the lack of adequate highways to carry residents and tourists away from the nuclear plant. *See* Brief for Petitioner at 5–8.

**16.** SAPL also argues that it is arbitrary and capricious to refuse to hold a revocation hearing *now* since new regulations proposed by the Commission would allow fuel loading and low-power testing at the Seabrook plant before

review of final emergency plans. Brief for Petitioner at 23–26; *see* 46 Fed.Reg. 61132 (Dec. 15, 1981). Since the wisdom of allowing fuel loading and low-power testing before review of final emergency plans and in the absence of a preliminary finding on the feasibility of EPZ evacuation is currently being considered in the rulemaking proceeding, we decline to address this argument.

powered only to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823. We may not substitute our judgment for that of the agency. *Id.*

We emphasize at the outset that the decision under review here is the Commission's decision not to institute a proceeding under 10 C.F.R. § 2.206 (1982). Although SAPL purports to challenge this decision, its real complaint appears in fact to center on the Commission's failure in 1980 to require reevaluation of outstanding construction permits in light of the newly adopted EPZ evacuation requirements. This complaint is simply beyond the scope of our review here. The reevaluation issue could have been addressed in the rulemaking proceedings; this is neither the time nor the place to raise it.

Turning to the issue properly before this court on review—whether the Commission acted arbitrarily or capriciously in failing to order a revocation hearing—we first examine the regulations governing the exercise of the Commission's discretion in such cases. The Commission's regulations contemplate institution of a revocation hearing only when there are (a) violations of the construction permit, (b) "potentially hazardous conditions," or (c) "other facts deemed to be sufficient ground for the proposed action." 10 C.F.R. § 2.202(a)(1) (1982). In this case SAPL alleged no violations of the Seabrook construction permits, and the Commission found that continued construction of the Seabrook plant is not a potentially hazardous condition since operation of the plant will not be permitted until after the EPZ evacuation plans have been fully reviewed. Director's Decision, *In re Public Service Company of New Hampshire,* NRC Docket Nos. 50–443, 50–444 (July 15, 1981), P.A. at 39–40. Apparently the Commission also concluded that evidence of the infeasibility of EPZ evacuation around the Seabrook site did not constitute "other facts deemed to be sufficient ground for the proposed action" under 10 C.F.R. § 2.202(a)(1). SAPL does not appear to argue that these regulations required a revocation hearing in this case.

Rather, SAPL argues that as a matter of policy a revocation hearing should be required whenever, as here, there is evidence that the licensee may not be able to provide the requisite "reasonable assurance that adequate protective measures can and will be taken in the event of a radiological emergency." 10 C.F.R. § 50.47(a)(1) (1982). We reject this argument.

The Supreme Court has held that resolution of "unresolved safety issues" in a nuclear plant licensing proceeding can be postponed until the operating license stage. *Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers, AFL–CIO,* 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961). Likewise, in *Porter County Chapter of the Izaak Walton League v. Nuclear Regulatory Commission,* 606 F.2d 1363 (D.C.Cir.1979), we held that because "the presence of unresolved safety issues does not require revocation of a construction permit," the Commission is not required to hold a revocation hearing when such issues are raised after issuance of the construction permit but before the operating license stage. *Id.* at 1368–69. SAPL seeks to distinguish *Power Reactor* and *Porter County Chapter* on the ground that the issues raised in those cases involved reactor design, which could be changed before the operating license stage as new technology developed. Thus, the passage of time in those cases, argues SAPL, might actually have increased the likelihood of the plant's compliance with safety standards prior to the operating license stage. In contrast, SAPL notes, the issue here is one of siting. SAPL contends that the Seabrook plant's location will make it impossible for the plant to meet EPZ evacuation standards by the operating license stage. Thus, the passage of time will not bring new technology to help the plant meet the evacuation standards. *See* Reply Brief for Petitioner at 4–8.

We are unwilling, however, in judging the reasonableness of the Commission's decision, to distinguish between reactor design issues and siting issues or between problems that may be solved through the develop-

ment of new technology and those that cannot. Neither the applicable statutes nor the Commission's regulations suggest that the necessity of holding a revocation hearing depends upon whether reactor design or siting is at issue. Additionally, it is arguable that the alleged infeasibility of evacuating the Seabrook EPZ is not a siting problem at all but rather a planning problem. Planning problems, like reactor design problems, may in time be solved as better emergency response procedures are developed. We can therefore draw no principled distinction between reactor design issues and the so-called siting issue involved here, nor can we distinguish between problems that are amenable to solution through new technology and those that are not. Thus, we reject SAPL's invitation to hold that only certain types of safety issues may be left unresolved until the operating license stage.

■■■ The more telling point SAPL makes is that in both *Power Reactor* and *Porter County Chapter* there had been a preliminary finding at the construction permit stage on the safety issue raised by the request for a revocation hearing. Brief for Petitioner at 11–12; *see Power Reactor,* 367 U.S. at 400–01, 81 S.Ct. at 1531; *Porter County Chapter,* 606 F.2d at 1367. Here, in contrast, there was no preliminary finding on the issue raised by SAPL's request because the feasibility of EPZ evacuation was not required to be addressed at the Seabrook construction permit stage. We have considered this additional factor in reviewing the Commission's decision. Nevertheless, we decline to adopt a per se rule that it is arbitrary or capricious for the Commission to refuse to order a revocation hearing on an unresolved safety issue on which there has been no preliminary finding, even when evidence is presented that at the operating license stage the licensee will be unable to provide the requisite "reasonable assurance that adequate protective meas-

ures can and will be taken in the event of a radiological emergency." 10 C.F.R. § 50.-47(a)(1) (1982). Furthermore, we hold that in the circumstances of this case the Commission's refusal to order a revocation hearing was neither arbitrary nor capricious.

The Commission's decision not to order a hearing immediately was based upon a consideration of the relevant factors. These factors included the population density around the Seabrook site, the feasibility of developing a notification system for the Seabrook EPZ, estimates of evacuation times for the Seabrook EPZ, and the availability of a full review of these factors at the operating license stage. *See* Director's Decision, *In re Public Service Company of New Hampshire,* NRC Docket Nos. 50–443, 50–444 (July 15, 1981), P.A. at 30–41. The Director specifically found that

> [c]urrent information does not indicate that it is infeasible to develop an emergency plan, including an evacuation plan, for the area surrounding the Seabrook site.... On the basis of available information, we conclude that plans can be developed for the Seabrook site that will assure that adequate protective measures can and will be taken in the event of a radiological emergency.

*Id.,* P.A. at 38–39. SAPL challenges this finding on the basis that the study of evacuation times relied upon by the Director [17] assumed "presently non-existent planning and resources." Brief for Petitioner at 21. We cannot say, however, that the Director's reliance on this report was arbitrary or capricious or a clear error of judgment. The report was prepared by the Federal Emergency Management Agency, the agency charged with technical assistance to the Commission. *See* 10 C.F.R. § 50.47(a)(2) (1982). The study did note the lack of some costly resources, such as buses, ambulances, siren systems, mobile public address equipment, and supplemental VHF radio equipment. [18] However, the most important com-

---

17. Federal Emergency Management Agency, *Dynamic Evacuation Analyses: Independent Assessments of Evacuation Times from the Plume Exposure Pathway Emergency Planning* *Zones of Twelve Nuclear Power Stations* (Feb. 1981), P.A. at 178–87.

18. *See id.,* P.A. at 181.

ponent of the study, the evacuation time estimate for the nearby beaches, was calculated on the basis of actual traffic flow and the capacity of area highways.[19] Thus, the evacuation time estimates in the report do not appear to be so dependent upon non-existent resources as to be entirely speculative.

Finally, we address petitioner's argument that postponing resolution of the EPZ evacuation issue is arbitrary and capricious because PSC's ever-increasing financial investment in the plant will skew the Commission's judgment in favor of granting the operating license regardless of whether adequate EPZ evacuation plans are presented.[20] On this point we are bound by our decision in *Porter County Chapter:*

> We do not ignore [petitioner's] fear that the inertia generated by completion of a nuclear plant, with the massive investment it represents, will sway the licensing authority from faithfully carrying out its mandate to protect the public safety, if necessary by denying an operational license. While that contention may have practical force in some instances, a court may not transform a projected tendency to inertia into a presumption of infidelity to duty. . . . It is not the public, but the utility, that must bear the risk that safety questions it projects will be resolved in good time, may eventually prove intractable and lead to the denial of the operating license.

*Porter County Chapter,* 606 F.2d at 1370. Moreover, in his decision the Director noted that "[t]he permittee's investment in con-

structing the facility is not . . . a proper factor for consideration in determining at the operating license stage whether a nuclear power plant is safe to operate." Director's Decision, *In re Public Service Company of New Hampshire,* NRC Docket Nos. 50–443, 50–444 (July 15, 1981), P.A. at 40. Additionally, in its brief before this court, the Commission stated, "The Commission does not and cannot consider the utility's investment in a particular facility in determining whether 'reasonable assurance' exists which justifies the grant of an operating license." Brief for Respondents at 36–37. In light of these assurances that the Commission will not allow its judgment to be skewed by continued construction of the plant, we cannot hold that SAPL's fears alone make the Commission's refusal to institute a revocation proceeding arbitrary or capricious. If at the operating license stage SAPL believes that the Commission has been derelict in its duty to protect the public health and safety, it can then challenge the Commission's action.

## VI. CONCLUSION

We are not unsympathetic with SAPL's position in this case. SAPL has presented evidence regarding the unique features of the Seabrook area and the current state of emergency preparedness in the area that would seem to warrant the Commission's most careful examination in evaluating the adequacy of the final Seabrook EPZ emergency plans. Nevertheless, however wise we might think it to hold a hearing now on

---

**19.** *Id.,* P.A. at 177.

**20.** Related to this argument is SAPL's assertion that because the Commission evaluates the adequacy of evacuation planning in light of the efficacy of engineered safeguards in the plant itself, the feasibility of EPZ evacuation must be considered before construction of the plant has proceeded so far that additional engineered safeguards cannot be provided. Brief for Petitioner at 31–32. We reject this argument. There is no indication in the record that any particular engineered safeguard would make EPZ evacuation feasible or that such a safeguard must be added to the plant before further construction. This argument rests on nothing more than SAPL's fear that once the operating

license stage is reached, the Commission will not require PSC to invest more money to install necessary engineered safeguards. As the Director noted in his decision, however, "[i]n order to receive an operating license, the applicant must do all things necessary to ensure safe operation of the facility." Director's Decision, *In re Public Service Company of New Hampshire,* NRC Docket Nos. 50–443, 50–444 (July 15, 1981), P.A. at 40. Therefore, the mere possibility that additional engineered safeguards might be required before PSC can provide "reasonable assurance" under 10 C.F.R. § 50.47(a)(1) does not render the Commission's refusal to hold a revocation hearing arbitrary or capricious.

**1034**

the feasibility of EPZ evacuation, we cannot order the Commission to hold a revocation hearing when its refusal to do so has a reasoned basis supported by law. Thus, for all the foregoing reasons, the decision of the Commission is

*Affirmed.*