852 F.2d 9
 57 USLW 2077, 18 Envtl. L. Rep. 21,437
 MASSACHUSETTS PUBLIC INTEREST RESEARCH GROUP, INC., et al.,
Petitioners,
v.
UNITED STATES NUCLEAR REGULATORY COMMISSION, Respondent,
Commonwealth of Massachusetts and Boston Edison Company, Intervenors.
 No. 87-1865.
 United States Court of Appeals,
First Circuit.
 Heard May 3, 1988.
Decided July 15, 1988.
 
 William Abbott with whom Simonds, Winslow, Willis & Abbott, Boston, Mass., was on brief, for petitioners.
 George B. Dean, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief for intervenor Com. of Mass.
 Steven F. Crockett with whom Rochelle M. Gunner, William C. Parler, General Counsel, William H. Briggs, Jr., Sol., E. Leo Slaggie, Deputy Sol., and Laura E. Frossard, Land and Natural Resources Div., Dept. of Justice, Washington, D.C., were on brief for respondent.
 R.K. Gad III with whom James B. Levy, Ropes & Gray and William S. Stowe, Boston, Mass., were on brief, for intervenor Boston Edison Co.
 Before COFFIN and BOWNES, Circuit Judges, and FUSTE,* District judge.
 BOWNES, Circuit Judge.
 
 
 1
 Petitioners in this case seek judicial review of a decision by the Nuclear Regulatory Commission (NRC or Commission) denying their request for specific enforcement action against the Boston Edison Company (Edison) based on its operation of the Pilgrim Nuclear Power Station (Pilgrim). The Massachusetts Public Interest Research Group, Inc. (MassPIRG), in cooperation with other parties,[1] filed a petition with the NRC pursuant to 10 C.F.R. Sec. 2.202 and 10 C.F.R. Sec. 2.206 requesting that the Commission issue an order to Edison to show cause why Pilgrim should not remain closed[2] or have its operating license suspended until it remedied certain deficiencies which allegedly threatened the public health and safety. The petition asserted three grounds for its request: (1) deficiencies in plant management, (2) inadequacies in the offsite emergency response plans, and (3) design flaws in the plant's containment structure. The Director issued an interim decision on August 21, 1987, which became final on September 14, 1987, denying petitioners' request on the emergency preparedness and containment issues and deferring action on the management issue. Petitioners filed for review in this court on October 1, 1987, pursuant to the Hobbs Act, 28 U.S.C. Sec. 2342; Respondent, NRC, and Intervenor, Boston Edison, moved to dismiss for lack of jurisdiction. Both the NRC and Edison argue that the Commission's refusal to take enforcement action is unreviewable under Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).
 
 
 2
 On December 28, 1987, we issued an order directing the parties to address the following question: "Whether the August 21, 1987 agency decision, which decided two of the three grounds petitioners raised, but reserved decision on a third issue (alleged management deficiencies) is a final agency decision which should be reviewed by this court at this time in advance of the agency's determination of the management issue."
 
 
 3
 In this decision, we address the questions of both finality and judicial reviewability. We hold that the Director's decision constitutes final agency action within the meaning of the applicable jurisdictional statutes. We further hold that given the lack of a meaningful standard of review in either the Atomic Energy Act of 1954, 42 U.S.C. Sec. 2011 et seq., or the NRC regulations, the refusal of the NRC to issue a show cause order against Edison is not subject to judicial review.
 
 I. Statutory Background
 
 4
 Under the Atomic Energy Act of 1954, 42 U.S.C. Sec. 2011 et seq., and the Energy Reorganization Act of 1974, 42 U.S.C. Sec. 5801 et seq., the NRC controls the licensing and regulation of the construction and operation of nuclear power plants.[3] These statutes grant the NRC substantial power to ensure that each nuclear power station complies with applicable health and safety standards. The NRC may choose among various enforcement alternatives to revoke, suspend or modify a license, to impose civil penalties, or to issue a cease and desist order. See "General Statement of Policy and Procedure for NRC Enforcement Actions," 10 C.F.R. Part 2, App. C.
 
 
 5
 NRC monitoring of its licensees is supplemented by 10 C.F.R. Sec. 2.206 which provides for public participation in enforcement activity. Under section 2.206,[4] any person may file a request with the NRC to institute enforcement action. A section 2.206 petition must specify the relief requested and must state the factual predicate for its request. See 10 C.F.R. Sec. 2.206(a). If the director of the NRC finds merit in the petition, the director then may institute proceedings against the licensee. Such proceedings include, but are not limited to, an order under 10 C.F.R. Sec. 2.202 to show cause why the NRC should not modify, suspend or revoke the license of the power plant.[5] If the director finds that the petition lacks merit, she or he must advise the petitioner in writing of both the decision and the underlying rationale. See 10 C.F.R. Sec. 2.206(b). The NRC will not entertain appeals from the director's decision; the Commission may, however, undertake a sua sponte review. Absent review by the NRC, the director's decision becomes final agency action twenty-five days after its issuance. See 10 C.F.R. Sec. 2.206(c)(1).
 
 II. Factual Background
 
 6
 Petitioners in the present case filed a section 2.206 petition on July 15, 1986, requesting the issuance of a show cause order against Boston Edison Company under section 2.202. The petition stated:
 
 
 7
 The action requested is that an order be issued to the Boston Edison Company to show cause as to why the Pilgrim I Nuclear Power Station ("Pilgrim") should not remain closed and or have its operating license suspended by NRC unless and until that time at which the licensee demonstrates conclusively to the NRC and the public: (1) that its management is no longer hampered by the deficiencies noted by the petitioners herein; (2) that the Radiological Emergency Response Plan fully complies with 10 C.F.R. Sec. 50.47 and 10 C.F.R. Sec. 50.57, is given high organizational priority and sufficient funding by the licensee, the Federal Emergency Management Agency (FEMA), the Massachusetts Civil Defense Agency (MCDA) and local governments; and (3) that the inherent design flaws noted by petitioners herein which render Pilgrim I's containment structure extremely vulnerable in most accident scenarios have been overcome to the extent that the public health and safety will be assured.
 
 
 8
 The Director issued a decision on August 21, 1987, which denied petitioners' request to issue a section 2.202 order to show cause. The Director summarized his holding as follows:
 
 
 9
 Petitioners' request insofar as it relates to the emergency preparedness and containment issues is denied. A final decision with respect to the management issues is deferred. However, to the extent Petitioners are requesting that Pilgrim remain shut down until the NRC is satisfied that management and emergency preparedness issues are dealt with to the Commission's satisfaction, the Petition is granted.
 
 
 10
 Boston Edison Company (Pilgrim Nuclear Generating Station), 26 NRC 87, 89 (1987) [hereinafter Director's Decision ].
 
 
 11
 The Director's decision addressed each of the three grounds for enforcement action raised in the petition. Regarding the alleged management deficiencies, the Director noted that significant problems did, in fact, exist. He reasoned, however, that because Pilgrim had been shut down and would not be permitted to restart until the management issues had been resolved to the satisfaction of the NRC, the issuance of a show cause order would not further public health or safety. Id. at 93. He therefore deferred any decision on the management issue until a future date. Id.
 
 
 12
 The Director's treatment of the emergency preparedness issue relied upon the evaluation of Pilgrim's emergency response plan by the Federal Emergency Management Agency (FEMA). Emergency preparedness refers to both onsite and offsite planning. Onsite plans must be submitted by the licensee and approved by the NRC. See "Emergency Planning and Preparedness for Production and Utilization Facilities," 10 C.F.R. Part 50, App. E. Petitioners have not challenged the onsite plans of Boston Edison. Offsite plans are developed by state and local officials with the help of the licensee. See 10 C.F.R. Secs. 50.47, 50.54(s). NRC and FEMA jointly assess all radiological emergency response plans. See 10 C.F.R. Sec. 50.47(2) (FEMA findings on emergency response plans will constitute rebuttable presumption in NRC review); and 10 C.F.R. Sec. 50.54(s)(3) (same).
 
 
 13
 FEMA issued two contemporaneous reports evaluating the offsite emergency planning and preparedness of Pilgrim. The first report responded to the allegations of the section 2.206 petition. It examined each of the seven alleged deficiencies in light of the information on record at the time the petition was filed. FEMA found that most of the issues raised were identical to those stated in a 1983 petition submitted by MassPIRG and denied by the NRC after an examination by both itself and FEMA. The first FEMA report concluded that the section 2.206 petition did not sustain its contentions. See "Analysis of Emergency Preparedness Issues at Pilgrim Nuclear Power Station Raised in a Petition to the NRC Dated July 15, 1986" at 4, reprinted in Record Appendix 1717, 1722. The first FEMA report further noted, however, based upon the findings of the second report, that FEMA agreed with "the general thrust of some of the conclusions of the Petition...." The second report, entitled "Self Initiated Review and Interim Findings," reprinted in Record Appendix at 1559 [hereinafter "Self Initiated Review"], involved further analysis of Pilgrim's radiological emergency response plans, including a review of reports submitted by both the Commonwealth of Massachusetts and Boston Edison. On the basis of that record, FEMA concluded in its second report that the offsite emergency plan "is inadequate to protect the health and safety of the public in the event of an accident at the Pilgrim Nuclear Power Plant and cannot be implemented until the inadequacies noted in this [report] are corrected." Id. at 1611.
 
 
 14
 In his decision, the Director referenced both FEMA reports. He stated that based on FEMA's finding that the section 2.206 petition did not sustain its contentions, petitioners' request for a show cause order would be denied. He further stated that based on the Self Initiated Review of FEMA, the NRC would not permit the restart of Pilgrim until after further consideration of the emergency planning issues. See Director's Decision at 95.
 
 
 15
 Finally, the Director addressed the question of deficiencies in the containment structure of Pilgrim. He found that the petitioners had failed to present sufficient evidence to sustain their contentions and he denied their request for relief. Id. at 106.
 
 
 16
 On appeal, petitioners argue that the Director's refusal to issue a show cause order with respect to inadequacies in the emergency response plan and the risks posed by the containment structure of Pilgrim was arbitrary, capricious and an abuse of discretion. We need not address that contention because we find, as a matter of law, that the agency action in this case is unreviewable. Before we discuss that issue, we turn to the threshold question raised by this court in its order of December 28, 1987: whether the Director's decision constitutes final agency action.
 
 III. Finality
 
 17
 The Director issued his decision on August 21, 1987, rejecting two of petitioners' claims for a show cause order and reserving for later decision the third claim of management deficiencies. A notice served with that decision and later published in the Federal Register stated that the Director's decision would become final in twenty-five days, pursuant to 10 C.F.R. Sec. 2.206(c)(1). See 52 Fed.Reg. 32,363 (1987). In response to the motions to dismiss of the NRC and Edison, we requested that the parties address the question of whether the partial disposition of the section 2.206 petition constituted final action by the agency.[6] Each of the parties to this case agrees that, merely because the Director deferred action on the question of management inadequacies, the decision does not lack finality. We find their arguments persuasive.
 
 
 18
 The standard for determining whether an agency has taken final agency action within the meaning of the Administrative Procedure Act is set forth in Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970): "[T]he relevant considerations in determining finality are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." Id. at 71, 91 S.Ct. at 209 (citations omitted).
 
 
 19
 The parties argue, and we agree, that the Director's decision has established legal rights and obligations. It constitutes the final word on whether the NRC will grant or deny the requested enforcement action on the basis of deficiencies in either emergency planning or containment. That the NRC will review the adequacy of the radiological emergency response plan prior to permitting the restart of Pilgrim does not render the denial of the request for a show cause order nonfinal. As the Second Circuit noted in County of Rockland v. NRC, 709 F.2d 766, 775 (2d Cir.), cert. denied, 464 U.S. 993, 104 S.Ct. 485, 78 L.Ed.2d 681 (1983), all licensees of the NRC are subject to continual scrutiny to guarantee compliance with applicable health and safety standards, so the fact that a decision to forego enforcement action in response to a section 2.206 petition may be reexamined does not render it unreviewable:
 
 
 20
 The Commission is charged with oversight responsibility to ensure that safety precautions remain adequate at all nuclear facilities. Given the nature of its statutory mandate, every order is subject to reexamination as new findings are reported and exercises conducted.... Notwithstanding these limitations, every order by the Commission must be evaluated in light of the "finality" factors as articulated in the case law.... Otherwise, the Commission potentially could insulate itself from appellate review simply by labeling a decision as "interim" or subject to reexamination.
 
 
 21
 Id. at 775 n. 12 (citing Boston Marine Terminal Association, 400 U.S. at 69-72, 91 S.Ct. at 208-10) (emphasis in original). Accord Rockford League of Women Voters v. NRC, 679 F.2d 1218, 1219-20 (7th Cir.1982) (denial of section 2.206 request to revoke construction permit final despite existence of ongoing administrative action in licensing proceeding); NRDC v. NRC, 680 F.2d 810, 816 (D.C.Cir.1982) (agency order " 'may be "final" even if it is not the last that may be entered' ") (quoting Ecology Action v. Atomic Energy Commission, 492 F.2d 998, 1000 (2d Cir.1974)) (footnote omitted).
 
 
 22
 Nor would review disrupt an ongoing adjudicatory process. The twenty-five-day time period in which the Commission could opt to review the Director's decision has lapsed; the NRC no longer has jurisdiction to reconsider the petition.
 
 
 23
 Finally, the fact that the Director has deferred action on the issue of management deficiencies does not render his decision on emergency planning and containment nonfinal. Direct legal consequences flow from the Director's decision; a show cause order will not be issued to Edison as requested by petitioners. Although other issues raised in the petition eventually may necessitate enforcement action, the final word has been spoken on two of the issues raised in the petition.[7]
 
 IV. Judicial Reviewability
 
 24
 Jurisdiction to review NRC decisions is afforded by the Hobbs Act, 28 U.S.C. Sec. 2342(4),[8] and the Atomic Energy Act of 1954, 42 U.S.C. Sec. 2239.[9] The courts of appeals may review all final orders of the NRC, "except to the extent that--(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Administrative Procedure Act, 5 U.S.C. Sec. 701(a). The Court distinguished these two exceptions to judicial review in Heckler v. Chaney, 470 U.S. at 830, 105 S.Ct. at 1655:
 
 
 25
 The former applies when Congress has expressed an intent to preclude judicial review. The latter applies in different circumstances; even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.
 
 
 26
 None of the parties in this case has argued that the Atomic Energy Act precludes judicial review; rather, their dispute involves subsection 701(a)(2) and the question of whether a sufficient standard exists, in either the statute or in NRC regulations, to enable this court to review the Director's decision. We find that no "meaningful standard" exists.
 
 
 27
 Our inquiry is informed by two recent decisions of the Court: Florida Power and Light Co. v. Lorion, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) [hereinafter Lorion ], and Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714. Lorion involved an NRC denial of a section 2.206 petition. It established that the courts of appeals have initial subject matter jurisdiction over challenges to agency nonenforcement decisions. The Court expressly noted that no party had raised the separate question of whether denials of section 2.206 petitions are instances of unreviewable agency action "committed to agency discretion by law," and it declined to address that issue sua sponte. See Lorion, 470 U.S. at 735 n. 8, 105 S.Ct. at 1602 n. 8 (citing Chaney, 470 U.S. at 828-35, 105 S.Ct. at 1654-57).
 
 
 28
 Chaney broached the question of whether an agency refusal to take enforcement action is subject to judicial review. The Court held that an agency decision not to take requested action is presumptively unreviewable; it stated that the presumption could be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." 470 U.S. at 832-33, 105 S.Ct. at 1656 (footnote omitted). The Court listed several reasons for the general unsuitability of review of nonenforcement decisions: (1) deference to agency expertise in ordering its priorities, allocating its resources and determining whether the enforcement action requested best suits the alleged violation; (2) the absence, in the agency's decision not to act, of an exercise of coercive power over individual liberty or property rights; and (3) the analogy between an agency's refusal to institute proceedings and a like decision by a prosecutor which has long been regarded as discretionary. Id. at 831-32, 105 S.Ct. at 1655-56.
 
 
 29
 The Court then considered whether the substantive statute at issue in Chaney, the Federal Food, Drug, and Cosmetic Act (FDCA), sufficiently restricted the discretion of the Food and Drug Administration (FDA) so as to rebut the presumption of unreviewability. Respondents in Chaney had petitioned the FDA, alleging that the use of drugs to carry out death sentences by lethal injection violated the FDCA, and requesting enforcement action to prevent the contested use. The FDA refused the request. The Court found that the FDCA did not provide a sufficient standard under which it could review the agency decision. It stated that the statute committed complete discretion to the agency to institute enforcement action. 470 U.S. at 835, 105 S.Ct. at 1657. The Court also rejected respondents' reliance on an agency policy statement, noting that (1) the policy statement did not have the legal force of a properly adopted agency rule, and (2) that it contradicted an agency rule which affirmed FDA discretion in certain enforcement decisions. Id. at 836, 105 S.Ct. at 1658. Finally, the Court declined to address the question of whether a properly adopted agency rule "might under certain circumstances provide courts with adequate guidelines for informed judicial review of decisions not to enforce...." Id.
 
 
 30
 In order to decide the instant case, we must address the unresolved question of whether agency rules can provide a sufficient standard for judicial review. None of the parties have argued that the controlling statute, the Atomic Energy Act, provides a standard within the meaning of Chaney. The general enforcement provisions of the Act are all framed in permissive language. See, e.g., 42 U.S.C. Sec. 2236(a) ("Any license may be revoked for any material false statement ... or because of conditions ... which would warrant the Commission to refuse to grant a license on an original application....) (emphasis added). They provide no guidance as to how the agency should exercise its discretion. Accord Public Service Company of New Hampshire v. NRC, 582 F.2d 77, 82 (1st Cir.) ("The Atomic Energy Act of 1954 is hallmarked by the amount of discretion granted the Commission in working to achieve the statute's ends. The Act's regulatory scheme 'is virtually unique in the degree to which broad responsibility is reposed in the administering agency, free of close prescription in its charter as to how it shall proceed in achieving the statutory objective.' ") (quoting Siegel v. AEC, 400 F.2d 778, 783 (D.C.Cir.1968)), cert. denied, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978).
 
 
 31
 After the Court's decision in Lorion, the District of Columbia Circuit, on remand, considered the refusal of the NRC to institute enforcement proceedings. It stated that it doubted that the Atomic Energy Act restricted the discretion of the NRC, Lorion v. NRC, 785 F.2d 1038, 1040 (D.C.Cir.1968); it declined, however, to address the petitioner's argument that the NRC rules and regulations provided a sufficient standard for judicial review. The court affirmed the NRC decision on the merits, without reaching the jurisdictional issue. In the course of its opinion, it underlined the broad discretion of the agency in determining whether specific enforcement action is required. Id. at 1042.
 
 
 32
 We think that the threshold jurisdictional issue should be decided. To determine whether the NRC has created a meaningful standard for judicial review, we must address two questions: (1) whether formal and informal agency pronouncements may be sufficient to rebut the Chaney presumption of unreviewability, and (2) whether the NRC pronouncements rebut that presumption in this case.
 
 
 33
 In Center for Auto Safety v. Dole, 846 F.2d 1532 (D.C.Cir.1988) (per curiam), the D.C. Circuit considered whether the denial by the National Highway Transportation Safety Administration (NHTSA) of a citizen's petition to reopen an enforcement investigation against an automobile manufacturer for alleged safety-related defects in its product was subject to judicial review. On rehearing, the court vacated its earlier decision which held that NHTSA had promulgated detailed regulations concerning the submission and disposition of such petitions which were the "legal equivalent of a statutory standard for Chaney purposes," 828 F.2d 799, 803 (D.C.Cir.1987), and held that the regulations at issue did not limit the discretion of the agency "in a way that enables us to conduct a meaningful review of the agency's compliance." Center for Auto Safety v. Dole, 846 F.2d at 1535. The NHTSA regulations at issue required an official evaluating a citizen petition to conduct a technical review, and, if she or he found a "reasonable possibility" that a safety-related defect exists, to grant the petition. The court stated that the "reasonable possibility" standard did not rule out agency consideration of nonsafety related factors such as the availability and allocation of resources. It concluded:
 
 
 34
 The regulation sub judice provides the court no way to second-guess the weight or priority to be assigned these elements. In particular, it would be unwise, and inconsistent with the broad mandate of the agency under the governing statute, to infer a mandatory allocation of the agency's limited resources from the regulation at issue. We must thus conclude that NHTSA's decision governed by this regulation is not reviewable.
 
 
 35
 Id. at 1535.
 
 
 36
 In the course of its decision, however, the panel of the D.C. Circuit reaffirmed the reasoning of the original decision in Center for Auto Safety v. Dole which held that agency regulations could provide a sufficient standard for meaningful review. The panel stated:
 
 
 37
 Just as Congress can provide the basis for judicial review of nonenforcement decisions by spelling out statutory factors to be measured by the courts, so an agency can provide such factors by regulation. When an agency chooses to so fetter its discretion, the presumption against reviewability recognized in Chaney must give way.
 
 
 38
 Id. at 1534. See also Padula v. Webster, 822 F.2d 97, 100 (D.C.Cir.1987) (agency pronouncement is binding if it (1) imposes significant restraints on agency discretion and (2) is intended by agency to be a binding norm). We agree with the District of Columbia Circuit that agency regulations may provide a standard to apply within the meaning of Chaney. We therefore must address whether the NRC regulations impose significant restraints upon agency discretion so as to establish a standard for judicial review in this case.
 
 
 39
 Petitioners have identified three possible sources among the various formal and informal statements of the NRC for a standard of review: (1) agency regulations, (2) agency policy statements, and (3) internal agency standards. We find that none of these limits agency discretion sufficiently so as to enable meaningful review.
 
 
 40
 The NRC regulations concerning section 2.206 petitions are entirely permissive. The relevant provision merely states that upon receiving a citizen petition, the Director shall either institute a proceeding as requested or deny the request in writing. 10 C.F.R. Sec. 2.206(b). Section 2.202, which discusses show cause orders, provides that the Director may institute a proceeding to modify, suspend or revoke a license "as appropriate." 10 C.F.R. Sec. 2.202(a). In Rockford League of Women Voters v. NRC, 679 F.2d at 1222, a pre-Chaney opinion, the Seventh Circuit noted:
 
 
 41
 The statute, 42 U.S.C. Sec. 2236(a), permits but does not direct the NRC to revoke a license or permit, and the implementing regulations are likewise permissive rather than mandatory. The only thing the Director is required to do is, if he decides not to institute a revocation proceeding, to notify the requesting party in writing of his decision and of the reasons for it....
 
 
 42
 The agency policy statements are similarly unhelpful to petitioners for two reasons. First, Chaney cast significant doubt upon whether a mere policy statement, as opposed to a properly adopted agency rule, can ever provide law to apply. 470 U.S. at 836, 105 S.Ct. at 1658. Second, to the extent that such statements may establish standards of review, the NRC policy statements underline the vast discretion of the agency. Petitioners point to language in the "General Statement of Policy and Procedure for NRC Enforcement Actions," 10 C.F.R. Part 2, App. C, calling for "prompt and vigorous enforcement action" against licensees who do not meet agency standards. The paragraph cited by petitioners, however, continues to refer to the necessary discretion of the agency: "Each enforcement action is dependent on the circumstances of the case and requires the exercise of discretion after consideration of [agency] policies and procedures." 10 C.F.R. Part 2, App. C, sec. I. Similarly, while petitioners cite enforcement oriented language in the policy statement ("With very limited exceptions, whenever a violation of NRC requirements is identified, enforcement action is taken." 10 C.F.R. Part 2, App. C., sec. V), the next sentence of the same paragraph refers to the importance of agency control over the specific enforcement action taken: "The nature and extent of the enforcement action is intended to reflect the seriousness of the violation involved." Id. Chaney emphasizes the importance of deference to agency expertise in this area:
 
 
 43
 [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.
 
 
 44
 470 U.S. at 831, 105 S.Ct. at 1655.
 
 
 45
 Finally, petitioners argue that previous agency rulings on section 2.206 petitions establish a judicially manageable standard of review. They rely primarily on Consolidated Edison Co. of New York (Indian Point, Units 1, 2, and 3), 2 NRC 173 (1975), which discusses the standard of review the Commission should apply in considering the Director's denial of a section 2.206 petition.[10] The agency ruling states: "The Director correctly understood that a show cause order would have been required had he reached the conclusion that substantial health or safety issues had been raised." Id. at 176 (footnote omitted) (emphasis added).[11] Despite that rigid language, the agency ruling set forth a standard of review protective of the agency's discretion. We think it necessary to quote that standard in its entirety:
 
 
 46
 Review of the Director's decision is particularly important in cases such as this one, where a petition has been denied--absent review, there will be no further proceedings within the Commission. Even, here, however, it is important to maintain so far as possible the separation between "prosecutorial" and quasi-judicial functions within the Commission, which our regulations establish by vesting in the Director the discretion to institute show cause proceedings. And we note that Commission review of competing factual contentions at the threshold of a potential show cause proceeding poses difficulties for any subsequent Commission review of the outcome of resulting hearings. Premature commitment on factual issues is especially to be avoided.
 
 
 47
 So constrained, we believe the question whether the Director has abused his discretion in denying a request for a show cause order to embody the following elements: (1) whether the statement of reasons given permits rational understanding of the basis for his decision; (2) whether the Director has correctly understood governing law, regulations, and policy; (3) whether all necessary factors have been considered, and extraneous factors excluded, from the decision; (4) whether inquiry appropriate to the facts asserted has been made; and (5) whether the Director's decision is demonstrably untenable on the basis of all information available to him. Such review is similar to the review that would be accorded the Director's decision by a court, were immediate judicial review obtained, while preserving the Commission's necessary policy control.
 
 
 48
 Id. at 175 (emphasis added). The ruling builds in discretion at two levels: (1) deference by the Commission to the factual findings of the Director, and (2) deference by the courts to the "necessary policy control" of the agency. The NRC has referred explicitly to its discretion in the midst of a passage which petitioners allege limits that discretion. No indication exists that the agency intended to bind itself to a standard of "substantial health or safety issues." Cf. Padula v. Webster, 822 F.2d at 100 ("As a general rule, an agency pronouncement is transformed into a binding norm if so intended by the agency.") (citation omitted).[12] Rather the agency issued the ruling before the Court decided Chaney, at a time when agencies presumed that courts could review all nonenforcement decisions; the NRC statement reflects that legal presumption. It establishes a flexible standard of review respectful of the agency's necessary discretion; it does not reflect an intent to restrict that discretion. We do not find that this informal agency ruling creates a meaningful standard under Chaney.[13]
 
 
 49
 Petitioners advance one final argument to support their request for judicial review. They refer to the passage of the "Sholly Amendments," Pub.L. No. 97-415, Sec. 12, 96 Stat. 2073 (codified as amended at 42 U.S.C. Sec. 2239 (1982)), which Congress enacted in response to a decision by the District of Columbia Circuit holding that a public hearing must be held, if requested, before approval of any license. See Sholly v. NRC, 651 F.2d 780 (D.C.Cir.1980), vacated, 459 U.S. 1194, 103 S.Ct. 1170, 75 L.Ed.2d 423 (1983). The Sholly Amendments exempt most licensing decisions from the hearing requirement. Petitioners argue that the congressional failure to restrict judicial review of NRC enforcement decisions at the time it passed the Sholly Amendments indicates acquiescence to such review. The argument has no merit. No court has ruled, since Chaney, that agency enforcement decisions are per se reviewable. Therefore, no court has advanced a mandatory rule analogous to the Sholly decision which prompted legislative action. We need not address whether Congress may acquiesce by analogy, as petitioners suggest, because we find no judicial ruling on which to base such acquiescence.
 
 
 50
 Our decision to decline from judicial review of the NRC denial of the section 2.206 petition is bolstered in this case by the fact that the agency has taken some enforcement action against Edison. The NRC has recognized the concerns about the radiological emergency response plans for Pilgrim raised by FEMA in its Self Initiated Review, and it has stated that "Pilgrim [will] remain shut down until the NRC is satisfied that management and emergency preparedness issues are dealt with to the Commission's satisfaction...." Director's Decision, 26 NRC at 89. The NRC has chosen one option among its available enforcement alternatives. On the one hand, it has denied petitioners' request to issue an order to show cause, while on the other hand, it has deferred the restart of the Pilgrim plant until Edison corrects identified deficiencies to the satisfaction of the agency. This choice reflects the very sort of agency decisionmaking which Chaney cited in support of the presumption of immunity from judicial review. See Chaney, 470 U.S. at 821, 105 S.Ct. at 1649 (agency expertise includes decision "whether the particular enforcement action requested best fits the agency's overall policies"). We are hesitant to second guess the judgment of the NRC in this area.
 
 
 51
 In conclusion, we note that the absence of a meaningful standard which limits the discretion of the NRC in enforcement actions and subjects it to judicial review does not place the agency above the law. Not only may Congress limit agency discretion by amending the substantive statute, but the courts also may review NRC decisions which undermine its fundamental statutory responsibility to protect "the health and safety of the public." See, e.g., 42 U.S.C. Sec. 2236(c). In Chaney, the Court noted, without deciding, that an agency policy which "is so extreme as to amount to an abdication of its statutory responsibilities" might be reviewable because "the statute conferring authority on the agency might indicate that such decisions were 'not committed to agency discretion.' " 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4. Such behavior on the part of an agency would subject it to review even if the agency had failed to promulgate a specific standard to apply in its formal or informal statements. We adopt the pre-Chaney statement of the Seventh Circuit in Rockford League of Women Voters v. NRC, 679 F.2d at 1222:
 
 
 52
 Our job is to assure that the Commission complies with the specific statutes and regulations applicable to its regulatory activities. It has done so here. Beyond that our power to review an agency's decision not to initiate a proceeding is extremely limited. We would exercise it only if we were strongly convinced that the Commission was inexcusably defaulting on its fundamental responsibility to protect the public safety from nuclear accidents.... [W]e are not so convinced in this case.
 
 
 53
 The petition for review is DENIED.
 
 
 
 *
 Of the District of Puerto Rico, sitting by designation
 
 
 [1]
 The Petition listed the following organizations and individuals as additional parties: William B. Golden, a Massachusetts State Senator; the Plymouth County Nuclear Information Committee, Inc.; the Plymouth Alliance; and Jo Ann Shotwell and James M. Shannon, individuals campaigning for the office of Massachusetts State Attorney General at the time of the Petition
 
 
 [2]
 Petitioners filed their request on July 15, 1986. Edison had closed the Pilgrim plant on April 12, 1986, as a result of deficiencies in management and emergency planning identified by the NRC. The NRC will not allow the restart of Pilgrim until the deficiencies are resolved to its satisfaction
 
 
 [3]
 The Energy Reorganization Act of 1974 transferred the licensing and regulatory functions of the Atomic Energy Commission to the NRC
 
 
 [4]
 Section 2.206 provides, in relevant part:
 (a) Any person may file a request for the Director ... to institute a proceeding pursuant to Sec. 2.202 to modify, suspend or revoke a license, or for such other action as may be proper.... The requests shall specify the action requested and set forth the facts that constitute the basis for the request.
 (b) Within a reasonable time after a request pursuant to paragraph (a) of this section has been received, the Director ... shall either institute the requested proceeding in accordance with this subpart or shall advise the person who made the request in writing that no proceeding will be instituted in whole or in part, with respect to his request, and the reasons therefor.
 (c)(1) Director's decisions under this section will be filed with the Office of the Secretary. Within twenty-five (25) days after the date of the Director's decision under this section that no proceeding will be instituted or no other action will be instituted or other action taken in whole or in part, the Commission may on its own motion review that decision, in whole or in part, to determine if the Director has abused his discretion.
 ................................................................................
 (2) No petition or other request for Commission review of a Director's decision under this section will be entertained by the Commission.
 
 
 [5]
 Section 2.202 provides, in relevant part:
 The [Director] may institute a proceeding to modify, suspend, or revoke a license or for such other action as may be proper by serving on the licensee an order to show cause....
 
 
 [6]
 We noted at oral argument that had the appeal arisen from a decision by the district court, the reservation of certain issues by the court for later consideration would have rendered the decision interlocutory and nonappealable. Cf. Fed.R.Civ.P. 54(b)
 
 
 [7]
 Boston Edison argues that because the deficiencies in emergency planning identified by FEMA in its Self Initiated Review are being considered by the NRC in its current evaluation of Pilgrim's restart potential, those particular issues are nonfinal and nonreviewable. We need not determine whether that distinction should be made because we do not review the Director's decision on the merits
 
 
 [8]
 23 U.S.C. Sec. 2342 provides, in relevant part:
 The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ...
 (4) all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42....
 
 
 [9]
 42 U.S.C. Sec. 2239 provides, in relevant part:
 (a) In any proceeding under this chapter, for the granting, suspending, revoking, or amending of any license or construction permit ... the Commission shall grant a hearing upon the request of any person whose interest may be affected by the proceeding....
 (b) Any final order entered in any proceeding of the kind specified in subsection (a) of this section shall be subject to judicial review in the manner prescribed in ... the provisions of section 10 of the Administrative Procedure Act, as amended.
 
 
 [10]
 The NRC no longer permits appeals from a director's decision. See 10 C.F.R. Sec. 2.206(c)(2), as amended by 42 Fed.Reg. 36, 240 (1977)
 
 
 [11]
 The Court cited the Consolidated Edison Co. ruling in Lorion, 470 U.S. at 732, 105 S.Ct. at 1601, for the proposition that: "The Commission interprets Sec. 2.206 as requiring issuance of an order to show cause when a citizen petition raises 'substantial health or safety issues.' "
 
 
 [12]
 Petitioners also cite Petition for Emergency and Remedial Action, 7 NRC 400, 404 (1978), for the proposition that the NRC must take enforcement action if "the public health and safety so requires." The passage cited, however, uses mandatory language only in reference to the initial licensing decision. When discussing the continuing oversight responsibilities of the NRC over its licensees, the ruling uses permissive language: "The Commission's responsibility does not cease with the issuance of a license. If, in the Commission's judgment, the public health and safety so requires, the Commission may take action to revoke, suspend, or modify licenses, impose civil penalties, or issue cease-and-desist orders." (Citations omitted) (Emphasis added)
 
 
 [13]
 Petitioners cite Eddleman v. NRC, 825 F.2d 46 (4th Cir.1987), as precedent for post-Chaney judicial review of the denial of a section 2.206 petition. The court in Eddleman, however, addressed two narrow procedural questions concerning the procedure due to petitioners in a section 2.206 action. That case does not involve the question of a substantive judicial review of a decision by a director of the NRC