**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-17-1268-KuTaS |
| | ) | |
| ANITA HOLCOMB, | ) | Bk. No. 2:11-bk-56326-BB |
| | ) | |
| Debtor. | ) | Adv. No. 2:17-ap-01283-BB |
| _____ | ) | |
| | ) | |
| ANITA HOLCOMB, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | **M E M O R A N D U M**[*] |
| | ) | |
| ROBERT ALTAGEN, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on March 22, 2018
at Pasadena, California

Filed - April 25, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Bankruptcy Judge, Presiding

_____

Appearances:   Blake Joseph Lindemann of Lindemann Law Group PLC
argued for appellant Anita Holcomb; James D.
Hepworth of Nemecek & Cole argued for appellee
Robert Altagen.

_____

Before:  KURTZ, TAYLOR, and SPRAKER, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

## I.   INTRODUCTION

After her surplus bankruptcy estate was fully administered and closed Anita Holcomb (Debtor) filed a state court complaint against her former chapter 7[1] bankruptcy attorney, Robert Altagen (Altagen), alleging claims for malpractice. The state court dismissed the action for lack of subject matter jurisdiction because Debtor had failed to seek leave from the bankruptcy court before suing Altagen. Debtor later sought leave from the bankruptcy court which the court denied on the basis that it had jurisdiction over the matter. The bankruptcy court reopened Debtor's bankruptcy case; and Debtor filed an adversary proceeding against Altagen. Altagen moved to dismiss the complaint under Civil Rule 12(b)(6). Taking judicial notice of its prior rulings in the bankruptcy case, the court granted Altagen's motion and dismissed Debtor's complaint with prejudice. Debtor appeals from this ruling.

For the reasons discussed below, we vacate the bankruptcy court's order dismissing Debtor's adversary complaint with prejudice and remand with instructions to dismiss the adversary proceeding without prejudice for lack of subject matter jurisdiction.

## II. FACTS

Debtor filed a chapter 11 petition in 2011 with the assistance of Altagen for the purpose of preventing the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, Rule references are to the Federal Rules of Bankruptcy Procedure, and Civil Rule references are to the Federal Rules of Civil Procedure.

-2-

foreclosure of her home (Property). The bankruptcy court approved Altagen's employment as Debtor's chapter 11 counsel.

Debtor had no income and the substantial equity in the Property represented her "retirement." Her plan of reorganization was to remodel the home, employ a broker to market and sell the Property, pay off her creditors, and then reap the benefits of a surplus due to increasing values in the real estate market. About a year after the filing, Debtor's plan had still not been confirmed.

The bankruptcy court converted Debtor's case to one under chapter 7, and Edward M. Wolkowitz was appointed the chapter 7 trustee (Trustee). Debtor executed a retainer agreement with Altagen to represent her in the converted chapter 7. Debtor then adopted a "scorched-earth" strategy aimed at saving the Property from liquidation by Trustee.

**A.    The Sale Of The Property**

With bankruptcy court approval, Trustee employed a real estate broker to market the Property for sale. Debtor refused to allow Trustee or his professionals access to the Property. Trustee filed a motion requiring Debtor to, among other things, turn over the Property and remove her exempt property from the premises. In June 2013, the bankruptcy court entered an order granting Trustee's motion, in part, which allowed Debtor to remain in the Property until Trustee opened a sale escrow for the Property (June Order). The June Order provided that Debtor was to vacate the Property no later than 5:00 p.m. on the second business day after Trustee informed Debtor's counsel in writing, including e-mail, that Trustee had opened a sale escrow for the

-3-

Property. The bankruptcy court also ordered Debtor to cooperate with Trustee.

Cooperate she did not. Debtor filed an amended Schedule A, showing that from the time her chapter 11 petition was filed until the time her case was converted, the Property increased in value from $1.3 million to approximately $3 million. On numerous occasions she sought to enjoin the sale and remove Trustee and his professionals due to their alleged misconduct and gross undervaluation of the Property. She also refused to vacate the Property after escrow was opened. After Trustee obtained a writ of possession, Debtor sought to enjoin him from executing on it.

Debtor also filed several motions to dismiss her bankruptcy case. In August 2013, Debtor filed a pro se motion to voluntarily dismiss her bankruptcy case. There, Debtor disclosed that she had obtained refinancing for the Property for an amount sufficient to cover the secured debt and administrative costs of her bankruptcy proceeding. Attached to her motion as Exhibit "A" was an email purporting to evidence refinancing of the Property was forthcoming. But such evidence it was not; it was not an approval, but a communication stating information that must be provided by Debtor for an application process to begin.

In November 2013, Trustee filed a motion to sell the Property by auction (Motion to Sell). Debtor objected to the motion, and this time Altagen, on behalf of Debtor, filed an emergency motion to dismiss her case. Again, Debtor represented that she had obtained pre-approval for a refinancing loan in the

-4-

amount of $1.2 million. She also asserted that all existing liens on the Property would be paid in full and monies would be held in escrow to pay any and all fees or amounts that the bankruptcy court ordered to be paid upon dismissal of her case. Finally, Debtor contended that dismissal was in the best interests of her creditors. Debtor also submitted a pre-approval certificate dated November 25, 2013, from 1st Point Lending, Inc., which was signed by Alex Nelson, a broker/loan officer.

Altagen re-filed the emergency motion to dismiss on December 2, 2013 (December 2013 MTD) because an incorrect event code was used for docketing the motion. On the same date, Altagen filed the declaration of Mr. Nelson. Mr. Nelson declared that he was the owner of 1st Point Lending, Inc. and that he had a lender who agreed to fund a $1.2 million loan to Debtor which was pending at Greater LA Escrow Inc., bearing Escrow No. 4128-MB. Mr. Nelson also stated that he spoke to Greater LA Escrow Inc., which indicated that the money was available to fund the loan subject to bankruptcy court approval. Attached to his declaration was proof of funding in the form of a statement from Charles Schwab in the name of an individual lender.

On December 4, 2013, the bankruptcy court held a hearing on the Motion to Sell and Debtor's December 2013 MTD. Altagen appeared and stated that he was apprised of the refinancing for Debtor's Property and spoke to Mr. Nelson about the loan. He told the court that the escrow was about to close and that there was a one year interest reserve built into the loan. Still, the

court had concerns:

THE COURT: Un-huh. And then what happens?

MR. ALTAGEN: If the loan is not paid off within one year, they would have all the rights that they would have, I assume as any other lender would.

THE COURT: How is she going to pay interest payments in a year? From what I understand, she's not --

MR. ALTAGEN: The money is built into the loan.

THE COURT: No. I get that. But that's for a year. Then what happens? I mean, I'm saying, isn't she going to be back in bankruptcy then or is she going to be losing the property again at that point? How is she going to service the debt?

MR. ALTAGEN: your Honor, I'm not a fortune teller. I don't know what's going to happen in a year. But her intention would be to market the property in a proper way as the owner of a piece of real estate that's been approved and allowed to be sold in the normal course of selling real estate. That's her objective. That's her goal. That's what she's been trying to do, as the Court so ably, aptly pointed out, since November of 2011. Okay.

THE COURT: . . . I mean, she's pretty much said repeatedly that she didn't have any source of income. I don't have any reason to think that's going to change. I mean, maybe it will. I hope it will. But she's been telling us that this is the money she's going to live on. You know. Whatever she gets out of this property is what she's going to live on for the rest of, you know, her natural life.

So I wouldn't be able to do this, to confirm this if this were -- if this were in Chapter 11 if this were a plan because I don't think it's feasible. So it's at best a band-aid that kicks this can down the road . . . . So I'm going to deny the motion to dismiss.

Over Debtor's objection, the bankruptcy court allowed Trustee to proceed with the sale of the Property by auction at the hearing. The Property sold for $1.85 million to the highest bidder, and the bankruptcy court entered an order approving the sale (Sale Order).

**B.    Debtor's Appeal Of The Sale Order And Request For A Stay Pending Appeal**

Acting pro se, Debtor filed a notice of appeal of the Sale Order in the United States District Court for the Central District of California.

Debtor also filed in the bankruptcy court a pro se motion to stay the Sale Order pending appeal (Motion For Stay). Debtor again reiterated that her primary goal was to retain the Property. Attached as Exhibit "A" was a commitment letter from Mr. Nelson. Debtor stated that the lender would be taking a first trust deed on the Property, all existing liens on the Property would be paid in full, and monies would be held to pay the fees for Debtor's attorney and other amounts that the court approved. Also attached was proof of funding in the form of a statement from Charles Schwab bearing the name of the individual lender.

The bankruptcy court denied her motion for a stay pending appeal finding that she would not prevail on the merits (Stay Order). The order provides in relevant part:

Debtor's only basis for the Motion is her contention that she will be able to borrow $1.2 [million] to refinance her property; however, the debtor has never presented any admissible evidence showing that a lender has agreed to lend this amount or any other amount.

As the Court explained on the record at the time of hearing on the debtor's last motion to dismiss the above bankruptcy case, even if the debtor were able to borrow $1.2 million, the debtor has repeatedly represented on the record in open court that she has no income and no ability to make debt service payments on the loan (which is why the alleged loan included a year's reserve for interest payments). Therefore, the debtor's need for liquidation or reorganization would not be resolved by the proffered financing. It would

-7-

merely (further) delay the inevitable.

Debtor later requested and obtained dismissal of her appeal of the Sale Order because the sale closed on December 12, 2013.

## C.    The Bankruptcy Case Is Closed

After paying administrative costs and secured and unsecured creditors, Trustee paid surplus funds to Debtor in the amount of $594,779, which included her $175,000 homestead exemption. Debtor obtained her § 727 discharge, and her bankruptcy case was closed.

## D.    The State Court Malpractice Action Against Altagen

A year after the closing of her bankruptcy case, Debtor filed a state court lawsuit against Altagen for malpractice, alleging that he failed to (1) timely secure the needed paperwork to stop the bankruptcy court's ordered sale of the Property; (2) properly advise the bankruptcy court that Debtor had obtained appropriate financing to forestall the sale of her home; and (3) advise the bankruptcy court as to the value of her home.  Debtor alleged that as a result of Altagen's negligence, her home was sold at a price far below market value resulting in damages between $1.5 to $2.5 million.

Altagen filed a motion for judgment on the pleadings seeking to dismiss the state court action for lack of jurisdiction.  Altagen alleged that Debtor had not sought leave from the bankruptcy court to file the state court action as required under the Barton Doctrine.[2]  The state court granted

---

[2] In Blixseth v. Brown, 470 B.R. 562, 565 (D. Mont. 2012), the court explained the Barton Doctrine as follows:
(continued...)

-8-

Altagen's motion for judgment on the pleadings on the ground that the bankruptcy court had exclusive jurisdiction over Debtor's legal malpractice claim against Altagen. Debtor sought to reopen her bankruptcy case and filed a motion seeking leave to pursue the state court action. Meanwhile, the state court dismissed the matter. Debtor did not appeal the state court's ruling.

The bankruptcy court later denied Debtor's motion for leave to sue Altagen in the state court. During the hearing, Debtor's counsel argued that the Barton Doctrine did not apply to Altagen because he was Debtor's attorney in her chapter 7 case and thus not appointed by the court. Counsel further argued that the creditors had been satisfied, the chapter 7 trustee's duties were over, and Debtor was the sole beneficiary of the malpractice action. Therefore, he asserted, the matter should proceed in state court.

In its ruling, the bankruptcy court agreed that the malpractice action did not affect the bankruptcy estate but found that it did affect the administration of the bankruptcy system. The court noted that Altagen had been appointed as

---

[2] (...continued)
The Barton Doctrine is derived from the United States Supreme Court's decision in Barton v. Barbour, 104 U.S. 126 (1881). It requires a party to 'first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity.' Jeffrey v. Fort James Corp., 421 F.3d 963, 970 (9th Cir. 2005) (discussing Barton). If the Bankruptcy Court has not granted leave, then other courts do not have subject matter jurisdiction. Id. at 971.

chapter 11 debtor-in-possession counsel and continued as Debtor's attorney when the case was converted. The court found that whether or not the Barton Doctrine applied, it was appropriate for the court to police how attorneys behaved in front of it. The court denied Debtor's motion for leave and found that Debtor's claims for malpractice were properly brought in the bankruptcy court.

The court granted Debtor's motion to reopen her bankruptcy case.

**E.    The Adversary Complaint**

On May 26, 2017, Debtor filed an adversary complaint against Altagen alleging California state law claims for fraudulent concealment, fraudulent misrepresentation, and constructive fraud in connection with Altagen's representation of Debtor in her converted chapter 7 bankruptcy case. Debtor alleged the state law fraud claims because the statute of limitations had run on her malpractice claims.

Debtor alleged that Altagen had concealed from the bankruptcy court the fact that Debtor had secured refinancing of her residence. She further asserted Altagen concealed from her that Trustee's counsel had agreed to continue the auction of the Property so that counsel could review the documentation relating to the refinance loan. Finally, Debtor complained that Altagen had not filed the declaration of Mr. Nelson who verified the financing, although Altagen had filed it. Debtor contended that her residence would not have been sold at the court-ordered auction if all the information regarding her refinancing loan had been given to the bankruptcy court. Debtor requested

compensatory damages in a sum of not less than $2.5 million and punitive damages in an amount to be determined.

In August 2017, Altagen moved to dismiss the complaint under Civil Rule 12(b)(6), contending that the allegations of fraud and concealment were contradicted by facts of which the bankruptcy court could take judicial notice. The bankruptcy court stated in the Stay Order that the refinancing loan would not have changed the court's decision to approve the sale because Debtor had no ability to service the debt. As a result, Altagen alleged that nothing he was accused of doing caused Debtor any damage.

At the hearing on Altagen's motion to dismiss the complaint, the bankruptcy court took judicial notice of its ruling in the Stay Order and then read from its tentative ruling:

> The text of the order made clear that the result would not have been different if Defendant had told the Court any of the things that Plaintiff claims he should have told the Court or provided any of the documents that Plaintiff alleges should have been provided to the Court. The Debtor had no ability to service any debt on the property and could not afford to retain the property. The only way to resolve Debtor's financial problems was to have the property sold. Any proposed financing would have merely kicked the can down the road, and Debtor would have lost her property once the interest reserve had been exhausted. The Trustee's willingness to agree to a postponement [of the auction] would not have changed this result.

According to the bankruptcy court, the liquidation of the Property was inevitable. The bankruptcy court granted Altagen's motion and dismissed Debtor's adversary complaint with prejudice. Debtor filed a timely notice of appeal.

-11-

### III. JURISDICTION

We have jurisdiction under 28 U.S.C. § 158. We discuss the bankruptcy court's jurisdiction below.

### IV. ISSUE

Whether the bankruptcy court had subject matter jurisdiction over this adversary proceeding.

### V. STANDARD OF REVIEW

We review the bankruptcy court's jurisdiction over Debtor's adversary complaint de novo. Harris v. Wittman (In re Harris), 590 F.3d 730, 736 (9th Cir. 2009).

### VI. DISCUSSION

**A. Bankruptcy Court Jurisdiction**

We may raise the question of subject matter jurisdiction sua sponte at any time during the pendency of the action, even on appeal and when not raised by the parties. See Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002).

A bankruptcy court's subject matter jurisdiction is established by statute. Under 28 U.S.C. § 1334(b), a bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."

"Arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision in the bankruptcy code. In re Harris, 590 F.3d at 737. "Proceedings 'arising in' a bankruptcy are generally referred to as 'core' proceedings, and essentially are proceedings that would not exist outside of bankruptcy. . . ." Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1193 (9th Cir. 2005); see also Battleground Plaza, LLC v. Ray

-12-

(In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010). A nonexhaustive list of core proceedings is set out in 28 U.S.C. § 157, which includes "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

The bankruptcy court also has jurisdiction over "those proceedings that are 'related to' a bankruptcy case." In re Pegasus Gold Corp., 394 F.3d at 1193.

> [T]he test is whether . . . the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Id. (quoting Fietz v. Great W. Savings (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (adopting the "Pacor test" derived from Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). The United States Supreme Court endorsed Pacor's conceivability standard with the caveats that "related to" jurisdiction "cannot be limitless," and that the critical component of the Pacor test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Celotex Corp. v. Edwards, 514 U.S. 300, 308 & n. 6 (1995).

We consider whether the bankruptcy court properly exercised its jurisdiction over this proceeding under one of these three categories.

**B.   Analysis**

It is indisputable that this adversary proceeding, which contains postpetition claims for state law fraud/malpractice

-13-

against Altagen acting in his capacity as Debtor's chapter 7 attorney, does not arise under Title 11. The claims alleged do not depend upon a substantive provision of bankruptcy law. In re Ray, 624 F.3d at 1130.

Nor do the allegations constitute any of the core jurisdiction matters listed in 28 U.S.C. § 157(b) which "arise in" a case under Title 11 and essentially are proceedings that would not exist outside of bankruptcy. In re Pegasus Gold Corp., 394 F.3d at 1193; In re Ray, 624 F.3d at 1131. The Ninth Circuit has held that some claims for professional malpractice based on services rendered in a bankruptcy case may be considered core proceedings because they arose during the administration of a bankruptcy case. Schultze v. Chandler, 765 F.3d 945 (9th Cir. 2014). In Schultze, members of an unsecured creditors' committee sued their court-appointed attorney for committing legal malpractice while representing them in a debtor business's bankruptcy proceeding. Id. at 947. The Ninth Circuit stated that "[w]here a post-petition claim was brought against a court-appointed professional, we have held the suit to be a core proceeding," because

> '[a] sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform. See generally §§ 321, 322, 324, 326-331.'

-14-

Id. at 949 (quoting Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925, 931-32 (5th Cir. 1999)).

The court noted that (1) the attorney's employment was approved by the bankruptcy court under § 1103, (2) his compensation was approved by the bankruptcy court under § 328, 330, and 331, (3) his duties pertained solely to the administration of the bankruptcy estate, and (4) the claim asserted by the plaintiffs was based solely on acts that occurred in the administration of the estate. In the end, the court found that "this particular legal malpractice claim is inseparable from the bankruptcy case" and thus "falls easily within the definition of a core proceeding." Id.

Debtor's claims against Altagen do not fall within the scope of Schultze. Although Debtor's claims would not exist without the bankruptcy case insofar as her claims against Altagen concern his handling of her bankruptcy case, it is not an "administrative" matter peculiar to the bankruptcy context involving, for instance, a court-appointed attorney such as in Schultze. Debtor's allegations against Altagen pertain solely to his representation as her chapter 7 private attorney. As such, Altagen's duties and representation of Debtor did not involve the administration of the bankruptcy estate as that was the chapter 7 trustee's role. Accordingly, Debtor's claims against Altagen do not impact the handling and administration of her estate and thus are easily separable from the bankruptcy case.

In short, Debtor's relationship with Altagen is governed by the same state-law rules of professional conduct regardless of

-15-

whether Altagen represented Debtor in a bankruptcy case or some state real estate matter. Therefore, her claims exist outside of bankruptcy and could be (and were) brought in the state court. The claims alleged against Altagen do not fall within "arising in" jurisdiction.

The claims also do not fall within the "related to" category for noncore proceedings. Debtor's fraud/malpractice claims against Altagen could not have any conceivable effect on her estate. The claims belong to Debtor personally and are not property of her estate, creditors have been paid in full, debtor received her discharge, and the chapter 7 estate has been fully administered and closed. Regardless of whether Debtor is successful or not with her claims against Altagen, her estate would receive no assets. No administration would occur and no distributions would be made. In the end, the critical component of the Pacor test is not met here: "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Celotex Corp., 514 U.S. at 300, 308 & n. 6. Accordingly, the bankruptcy court lacked subject matter jurisdiction over the underlying adversary proceeding.

## VII. CONCLUSION

For the reasons stated, we vacate the bankruptcy court's order dismissing Debtor's adversary complaint with prejudice and remand with instructions to dismiss this adversary proceeding without prejudice based on lack of subject matter jurisdiction.

-16-